UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Joseph A.,[1]<br><br>Plaintiff,<br><br>v.<br><br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:24-cv-02058-BNW<br><br>**ORDER** |

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff's application for disability benefits under Title II of the Social Security Act. Plaintiff moves for an order reversing the decision and awarding benefits. ECF No. 11. The Commissioner opposes and asks this Court to affirm its decision. ECF No. 13. Plaintiff filed a reply. ECF No. 14. For the reasons discussed below, this Court reverses and remands.

**I.   BACKGROUND**

On March 15, 2015, Plaintiff filed for disability insurance benefits and alleged an onset date of January 11, 2005. Administrative Record ("AR") 530–36. Plaintiff's claim was denied initially and upon reconsideration. AR 256–70.

A hearing was held before Administrative Law Judge ("ALJ") Norman Bennett on October 26, 2017. AR 106–25. On February 12, 2019, ALJ Bennett found that Plaintiff was not disabled. AR 14–38. Plaintiff appealed that decision to the Appeals Council, which granted his request for review and remanded for further proceedings due to legal error. AR 361–83.

On remand, ALJ Bennett conducted a second oral hearing on October 18, 2019. AR 90–105. He again found that Plaintiff was not disabled. AR 195–217. Plaintiff appealed that decision to the Appeals Council, which granted his request for review a second time and remanded for further proceedings due to legal error. AR 218–224.

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

ALJ Cynthia R. Hoover presided over the second remand. She conducted a third oral hearing in mid-December 2020. AR 66–89. She published an unfavorable decision in early 2021. AR 225–48. Plaintiff appealed that decision to the Appeals Council, which granted his request for review a third time and remanded for further proceedings due to legal error. AR 249–55.

On the third remand, ALJ Hoover conducted a fourth oral hearing on March 21, 2023. AR 39–65. She again found that Plaintiff was not disabled. AR 14–38. Plaintiff appealed to the Appeals Council for a fourth time, which denied his request for review. AR 1-6. Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g) on November 4, 2024. ECF No. 1.

## II.     STANDARD OF REVIEW

Administrative decisions in Social Security disability-benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action. . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining whether the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform other substantial gainful work

that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the ALJ will make a finding of non-disability. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to

4

which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an SGA. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the end of his prior period of disability on December 1, 2014, though his date of last insured on March 31, 2020. AR 19.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: spinal disorder, obesity, narcolepsy, cataplexy, depression, and post-traumatic stress disorder. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

5

impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform medium work but with the following limitations:

> the claimant may never climb ladders, ropes, or scaffolds, but may occasionally climb ramps or stairs. The claimant may frequently stoop, kneel, crouch, or crawl. The claimant may avoid extreme cold, vibration, and hazards, such as dangerous moving machinery like chainsaws and jackhammers and unprotected heights. The claimant may avoid sharp instruments. The claimant can understand, remember, and carry out simple tasks, with concentration, persistence, and pace for such work. The claimant may have occasional contact with others.

AR 21.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 26.

At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed, namely as a linen room attendant, hand packager, or cleaner. AR 26–27. The ALJ concluded that Plaintiff did not meet the definition of disability between December 1, 2014, through March 31, 2020. AR 27.

**III.     ANALYSIS**

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (internal citation and quotation omitted). The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms

"only by offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation and quotation omitted). General findings are insufficient. *Id.* "[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it." *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020). An ALJ legally errs when he fails to identify which testimony he found not credible and why. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). In addition, ALJs may not reject a claimant's statements about the intensity and persistence of their pain or other symptoms "*solely* because the available objective medical evidence does not substantiate [their] statements." 20 C.F.R. § 404.1529(c)(2) (emphasis added); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

An ALJ may consider a range of factors in assessing credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996)); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. *Ghanim*, 763 F.3d at 1165. So can spending a substantial part of the day engaged in physical activities that are transferable to a work setting. *Id.* In assessing credibility, it is improper for ALJs to cherry-pick evidence or mischaracterize the record. *Id.* at 1164; *see also Valenzuela v. Astrue*, 247 F. App'x 927 (9th Cir. 2007).

In sum, "[t]he clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). However, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing.

7

1  *Thomas*, 278 F.3d at 959.

2  Here, the parties dispute the second step: whether the ALJ provided specific, clear, and convincing reasons in discounting Plaintiff's symptom and limitation testimony regarding his narcolepsy. *Compare* ECF No. 11 at 9–27 *with* ECF No. 14 at 4–8. First, Plaintiff argues that the ALJ legally erred by (1) not identifying the specific testimony she was discrediting or explaining the evidence undermining it; and (2) rejecting Plaintiff's testimony based solely on the objective medical evidence. ECF No. 11 at 18–19. Second, Plaintiff argues that the ALJ improperly isolated and mischaracterized the record and that her rejection of Plaintiff's testimony is not supported by substantial evidence. *Id.* at 17–27. ("Nothing in the ALJ's analysis rejecting the testimony is based on substantial evidence."). Specifically, Plaintiff takes issue with the ALJ's findings that he did not take his medication consistently, and his medication was effective at controlling his narcolepsy. *Id.* at 20–23. He also takes issue with the ALJ relying on his daily activities to reject his symptom testimony because his activities neither contradict his testimony nor show that he can spend a substantial part of the day engaged in physical activities that are transferable to a work setting. *Id.* at 23–27.

The Commissioner responds that the ALJ reasonably discounted Plaintiff's symptom testimony based on Plaintiff's medication use, the efficacy of treatment, and his daily activities. ECF No. 13 at 4–8. First, the Commissioner states that the ALJ accurately summarized Plaintiff's allegations. *See id.* at 4. The Commissioner does argue that the ALJ explained the evidence undermining Plaintiff's testimony, like medication use/efficacy and daily activities. *Id.* at 5. The Commissioner rejects Plaintiff's argument that the ALJ relied solely on objective medical evidence given these considerations. *Id.* at 7 (citing AR 22–23).

Second, the Commissioner argues that the ALJ did not isolate or mischaracterize the record as she "is the final arbiter with respect to resolving ambiguities in the medical evidence," and Plaintiff merely seeks to have the evidence interpreted differently. *Id.* at 8 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). Furthermore, the Commissioner explains that substantial evidence supports the ALJ's decision to discredit Plaintiff's testimony.

8

1  *Id.* at 4–8. Specifically, the ALJ found that Plaintiff's narcolepsy was well controlled by
2  medication, she weighed Plaintiff's difficulty getting his medication against some non-
3  compliance with taking his medication, and his daily activities suggested a greater degree of
4  functioning than claimed. *Id.* The Commissioner argues these findings were supported by the
5  record. *Id.*

6  Plaintiff replies that the Commissioner ignores his argument that the ALJ did not find that
7  his daily activities contradicted his symptom testimony or that the activities met the threshold for
8  transferable work skills. ECF No. 14 at 4. Plaintiff further challenges the Commissioner's
9  argument that the record supports the ALJ's findings as to Plaintiff's inconsistent medication use
10 and the efficacy of treatment. *Id.* at 6–7.

**A. The ALJ did not legally err.**

First, the ALJ did not rely solely on her routine, introductory statement to reject Plaintiff's symptom testimony. *See* AR 22 ("[T]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."). She summarized Plaintiff's testimony, included the routine statement, and then explained why she discounted the testimony (due to consistency of medication use, efficacy of medication, and daily activities). Specifically, the ALJ identified the following portions of testimony:

> At the hearing, the claimant testified that he cannot work due to narcolepsy. He notes that he gets sleepy after three hours. He notes that he must take naps throughout the day. He notes that he can prepare meals, do dishes, vacuum, sweep, do laundry, and shop for groceries.

AR 22. She explained that Plaintiff's narcolepsy was well controlled by medication but that Plaintiff took his medication inconsistently. AR 22–23. She included citations to the record. *Id.*

The ALJ's explanation here is distinct from the explanations in Plaintiff's cited cases, in which those ALJs only included a general statement. *See* ECF No. 11 at 12. For example, in *Treichler*, the Ninth Circuit found that the ALJ erred when he only "made only the single general statement that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above

residual functional capacity assessment.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014). The Ninth Circuit explained that ALJs routinely include this statement as an introduction to the ALJ's credibility determination, but then go on to identify what parts of the claimant's testimony were not credible and why. *Id.* 1103. "But here, the ALJ stopped after this introductory remark," which was error. *Id.* Unlike the ALJ in *Treichler*, here, the ALJ did not stop after her introductory remark. As stated above, she went on to explain that Plaintiff's narcolepsy was well controlled by medication, but that Plaintiff took his medication inconsistently. AR 22–23.

Second, the ALJ did not rely *solely* on objective medical evidence to reject Plaintiff's symptom testimony. She properly considered factors such as consistency of medication use, efficacy of medication use, and daily activities. AR 22–23. These may be grounds for discounting a claimant's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (finding that ALJ may consider unexplained or inadequately explained failure to seek or follow treatment when assessing credibility); *see also Smartt v. Kijakazi*, 53 F.4th 489, 497, 500 (9th Cir. 2022) (finding that daily activities may be grounds to discredit a claimant's testimony to the extent they contradict claims of a totally debilitating impairment).

Taken together, the ALJ did not err because she identified specific portions of Plaintiff's testimony and explained her reasons for discounting that testimony. However, these reasons are not specific, clear, and convincing, as explained below.

**B. The ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.**

*1. Consistency of Medication Use*

At the hearing, Plaintiff testified that he could not work due to his narcolepsy. AR 47. He explained that, even with being fully compliant with medication, he can only be awake for a maximum of three to four hours on a good day, and after four hours he will fall asleep without realizing he is doing so. AR 56. In discounting this testimony, the ALJ explained that the records reflected issues with compliance with medication for narcolepsy. AR 23. The ALJ did note,

however, that the records referred to Plaintiff having difficulty obtaining his medication from the VA, but that it was unclear if this was a persistent issue throughout the period. AR 23 (citing Exhibit 51F, AR 4697–4700). Plaintiff cites to numerous medical records, claiming that the records show he diligently tried to timely obtain his medication, but had difficulty doing so.

First, the ALJ relied on Exhibit 19F (AR 2701–2762), which provides progress notes from late 2015 to mid 2016. AR 23. The ALJ noted that Plaintiff reported sleepiness and restlessness in 2016 but admitted to not taking his medication. *Id.* (citing Exhibit 19F). She does not provide a pincite for this assertion. Plaintiff cites to numerous pages in this exhibit to argue that he was diligent in obtaining his medication. Reviewing this exhibit, it shows that Plaintiff was using narcolepsy medications in January 2016 (AR 2756) but called to ask where his prescription for modafinil (one of the narcolepsy medications) was in February of that year (AR 2753). The physician noted that the certified pharmacy regulatory specialist would not let her renew the medication and that she needed to write another prescription. AR 2753. In March, Plaintiff was taking his medication (AR 2734, 2752) but appeared to have difficulty obtaining some of the medication in April. "I am here to get a narcolepsy medication from Dr. Makino, I used to take it from a non-VA provider but I do not know the name, I will go home get the bottle and come back next Wednesday." AR 2755–26. Plaintiff was taking his medication again in May. AR 2717–18, 2724. In sum, Exhibit 19F demonstrates that Plaintiff had short lapses in taking his medication due to refill issues, but promptly resolved those issues each month.

Second, the ALJ relied on Exhibit 29F in finding that Plaintiff had been off his medication in 2019. AR 23 (citing AR 3374–75). The specific pages the ALJ cited were from Dr. Geller in July of 2018. She said that, on his last visit, Plaintiff had excessive daytime sleepiness but "[a]t that time he was not on any regimen for treating his narcolepsy." AR 3374. Dr. Geller noted that she had restarted a regimen for narcolepsy that worked for him during the last visit. *Id.* Looking at Dr. Geller's notes from that last visit (which she refers to in the pages the ALJ cited), Dr. Geller stated: "[Plaintiff] is concerned about his lack of having access to care for his narcolepsy, as a result he has been off medication for almost a year." AR 3381.

11

While the cited pages do confirm the ALJ's statement that Plaintiff had been off his medication for one year, the same notes reflect that this was due to lack of access to medical care for his narcolepsy. Records from this gap period reflect Plaintiff's difficulty in obtaining his medication. In September of 2017, progress notes stated as follows: "[Plaintiff] shared that his appointments keep getting cancelled and expressed concern that his narcolepsy doctor has left the VA. He said that the last time his doc left, he fell through the cracks and was unable to get his necessary medication for approximately 8 months. [Plaintiff] stated that he does not want that to happen again." AR 2997. In June of 2018, the doctor noted that Plaintiff "took Xyrem and did well on it and is unable to take it due to lack of health insurance and not being on VA formulary." AR 2921.

Third, the ALJ relied on Exhibit 37F in finding that Plaintiff's prescription ran out in December of 2019 and was not refilled until May 2020. AR 23 (citing AR 4384). Specifically, the ALJ relies on the following note from Dr. Bannick-Mohrland from March 2020: "The prescription for Xyrem was valid through December 2019. Veteran is responsible for getting refills of his medication in a timely manner. There is no reason for him to be out of his medication for 6 months other than veteran not filling his existing prescription in a timely manner." AR 4384.

Dr. Geller prescribed Xyrem in June 2019. AR 3306–07. In September 2019, two months before Xyrem was set to expire, Plaintiff called to request that his medication be refilled because he was having trouble obtaining his medication due to Dr. Geller leaving. AR 4478. The notes reflect that Plaintiff said: "I am sick of having to wait three months to see her when I need medication renewed." AR 4477–78. In October 2019, Plaintiff saw a different doctor who stated he was unable to prescribe Xyrem and that Plaintiff would need to see a local sleep physician to obtain that prescription. AR 4468. That doctor further stated that Plaintiff would keep taking concerta and methylphenidate (the other narcolepsy medications). *Id.* Plaintiff saw the sleep physician, Dr. Bannick-Mohrland, in March 2020, who made the note about Plaintiff failing to refill his prescription. AR 4384. It is unclear whether Plaintiff was taking his other narcolepsy

1  medication (methylphenidate and concerta) during the time period he did not have Xyrem. It is
2  also unclear how long he had to wait to have his appointment with Dr. Bannick-Mohrland
3  considering it took Plaintiff three months to see Dr. Geller, the previous sleep neurologist.

  In sum, the ALJ has not offered specific, clear, and convincing reasons for rejecting Plaintiff's testimony based on inconsistent use of medication. The first exhibit (19F) demonstrates that Plaintiff had short lapses in taking his medication due to refill issues, but promptly resolved those issues each month. The second exhibit (29F) shows that Plaintiff did not take his medication in 2019 due to issues obtaining medication. The ALJ contends that Plaintiff's inconsistent medication use is only partially explained by his issues obtaining the medications, but she offers no evidence (apart from one sentence in the record) showing how this inconsistent use is Plaintiff's fault. And while one doctor blamed Plaintiff for a six-month lapse in taking *one* of his narcolepsy medications, other records show that he tried to refill that medication prior to the six-month lapse.

  The record overwhelming demonstrates that Plaintiff struggled to obtain his medication due to issues with the VA. AR 4393–94, 4468, 4478–79, 3306, 2922, 2997, 4696, 4463, 3381, 2753, 2725–26. "'Where a claimant provides evidence of a good reason for not taking medication for her symptoms,' such as inability to afford treatment, 'her symptom testimony cannot be rejected for not doing so.'" *Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). Weighing the record as a whole, the ALJ's decision to reject Plaintiff's symptom testimony due to inconsistent medication use is not supported by substantial evidence. *See Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998) (explaining that courts must review record as a whole and weigh "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion" in determining whether the Commissioner's findings are supported by substantial evidence.).

### 2. *Efficacy of Medication*

In rejecting Plaintiff's testimony, the ALJ noted that Plaintiff's narcolepsy was well controlled by medication in 2014. AR 22 (citing Exhibit 17F, AR 1979). She further noted that,

in 2019, he showed improvement with medication. AR 23 (citing Exhibit 29F, AR 3374–75). These are the only two instances the ALJ points to.

Starting with Exhibit 17F, the doctor noted in June of 2014 that Plaintiff's narcolepsy was "very well controlled on methylphenidate and dextroamphetamine since last visit." AR 1979. The doctor also noted that Plaintiff was using his medication three days on/one day off, and did not need to nap on the days he took his meds. *Id.* However, the doctor further recommended that Plaintiff "continue afternoon naps." *Id.*

Continuing to Exhibit 29F, the doctor wrote that Plaintiff, overall, "does feel improvement and this is noted by his Epworth sleepiness scale now being 14 as opposed to 22 when he is not on stimulant therapy." AR 3374. She further wrote "[Plaintiff] is following the directions for taking two scheduled naps daily of at least 1-2 hours." *Id.*

Rather than describe Plaintiff's symptoms, course of treatment, and bouts of remission or improvement, the ALJ relied on only two instances of improvement, one from 2014 and one from 2019, and did not explain why these instances discredited Plaintiff's testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard."). These two instances, five years apart, do not show a broader development of improvement. For example, in May of 2016, a doctor note stated that Plaintiff "is feeling sleepy, fatigue, and tired all the time, taking methylphenidate and modafinil." AR 2718.

Moreover, the ALJ did not explain why these records supported her decision to reject Plaintiff's testimony. This is particularly concerning given that the ALJ's reference to Exhibit 29F is consistent with Plaintiff's testimony that he must take naps throughout the day. AR 22, 47. Exhibit 17F is somewhat consistent with his testimony, namely because the notes the ALJ cites to appear to be internally inconsistent as the doctor recommends that Plaintiff "continue afternoon naps" but also that he did not need to nap on the days he took his meds. AR 1979. Regardless, even if Plaintiff did not need to nap on the days he took his meds, this would mean

14

that he still needed to take naps on every third to fourth day as he was using his medication three days on/one day off. *Id.* The ALJ did not explain how this supposed improvement discredited Plaintiff's testimony that he could not work due to narcolepsy. *See* AR 23. The ALJ's one citation (AR 1979) that is somewhat consistent with Plaintiff's testimony is not a specific, clear, or convincing reason to reject Plaintiff's testimony.

The Commissioner argues that "numerous treatment records documented how well medications helped, while at the same time not indicating that excessive naps persisted when Plaintiff was properly taking his medication regimen (*see, e.g.*, AR 4486: describing that Xyrem helped and without mention of naps, AR 4796: Adderall 'helps a lot,' and no mention of naps, 4766: Adderall is 'working well,' and no mention of naps; *but see* . . . ."). ECF No. 13 at 6. But this argument does not change the Court's above finding because the Commissioner's citations do not conflict with Plaintiff's testimony. As to AR 4486, the notes do indicate naps: "wakes up refreshed but gets sleepy a few hours after getting up, naps are refreshing." The same goes for AR 4769: "no excessive daytime sleepiness; less daytime napping." And as to AR 4766, it is true that there is no mention of naps, but this does not conflict with Plaintiff's testimony as this evidence is ambiguous as to whether naps were still necessary while on Adderall.

### 3. Daily Activities

The ALJ discounted Plaintiff's symptom testimony, in part, because she found that Plaintiff "can still perform many significant activities of daily living, including driving a car, shopping stores, cooking for himself, household cleaning, and playing weekly softball games, according to the records and hearing testimony." AR 23. However, she did not explain why these daily activities were inconsistent with Plaintiff's testimony. At the hearing, Plaintiff testified that he has a short amount of time to do his daily activities given his short wake windows. AR 47. "I have a limited time on which I can actually go out and do stuff." *Id.* "Usually, it's a three-hour time window because after the three hours, I start to get sleepy." *Id.*

The fact that Plaintiff can perform his daily activities within his wake windows is not inconsistent with his testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014)

(explaining that inconsistencies between a claimant's testimony and the claimant's reported activities is a valid reason for discrediting symptom testimony.). The ALJ did not address Plaintiff's testimony that he performs his activities within a three-to-four-hour window. She merely listed Plaintiff's daily activities without context, which does not substantiate her rejection of Plaintiff's testimony. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports.").

In addition, the ALJ did not articulate how Plaintiff's daily activities would be transferrable to the workplace. AR 23. And given Plaintiff's limited time to complete these activities, it is not apparent that they comprised a substantial portion of his day or would be transferable to employment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) *superseded on other grounds by* 20 C.F.R. § 404.1502(a) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial' portion of Ghanim's day, or were 'transferrable' to a work environment."). A plaintiff can be found disabled even if he is able to perform some activities of daily living. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

### C. Remand for further proceedings is the appropriate remedy.

When an ALJ improperly rejects a claimant's symptom testimony without providing legally sufficient reasons, the court may grant a direct award of benefits when certain conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). The three-part analysis of such conditions is known as the "credit-as-true" test. *Id.* The credit-as-true test asks (1) whether the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony; (2) whether the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3), whether, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1020.

In evaluating whether further administrative proceedings would be useful, courts consider "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014); *see also Leon v. Berryhill*, 880 F.3d 1041, 1046–47 (9th Cir. 2017) ("The second step of the credit-as-true analysis requires us to determine whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps."). The record does not have to be perfectly consistent or unambiguous to meet this step, rather, it must free from "significant" conflicts or ambiguities. *Treichler*, 775 F.3d at 1104 (identifying "significant factual conflicts" in finding that further administrative proceedings would be useful); *see also Kirk A. C. v. O'Malley*, No. 2:22-CV-02140-DJA, 2024 WL 228961, at *7 (D. Nev. Jan. 19, 2024) ("However, at the second step, there are significant factual conflicts in the record between Plaintiff's testimony and objective medical evidence.").

However, even when a claimant satisfies this three-part test, the district court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). Still, courts abuse their discretion by remanding for further proceedings where the credit-as-true rule is satisfied, and the record affords no reason to believe that the claimant is not disabled. *Garrison*, 759 F.3d at 1021.

Plaintiff argues that an award of benefits is proper in this case because he meets all three parts of the credit-as-true test. ECF No. 11 at 28. The Commissioner responds that the record as a whole creates serious doubt that Plaintiff is disabled and that there are material inconsistencies between Plaintiff's allegations and the record. ECF No. 13 at 9. The Commissioner further points to findings from state agency doctors that found Plaintiff capable of working with some limitations despite his impairments. *Id.* Plaintiff replies that the test is satisfied as the ALJ has

17

failed to provide adequate reasons to reject his testimony *four times* and the record has been fully developed. ECF No. 14 at 8.

First, as this Court has explained in depth above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony.

Second, this Court considers whether the record has been fully developed and further administrative proceedings would serve no useful purpose. Initially, it appears that the record has been fully developed given that this case has been ongoing for ten years, has been remanded three times, and the record contains thousands of pages. However, there are some significant inconsistencies in the record.

For example, doctor notes reflect Plaintiff stating that, while at his aunt's house in 2014, he worked 8 hours a day for three weeks and felt great while sleeping 9 to 10 hours a night and not napping. AR 1269. And in late 2015, Plaintiff stated that he was not on any prescription for narcolepsy and that he had a good medication regimen with his previous doctor in which he could stay awake all day. AR 3596. This conflicts with Plaintiff's testimony that he needed to nap every three to four hours even with medication. Though not a specific, clear, and convincing reason for rejecting Plaintiff's symptom testimony, the doctor note that blamed Plaintiff for not obtaining his medication for six months creates ambiguity as to whether he played some role in not receiving his medication. Finally, the state agency doctors found that Plaintiff was capable of working with some limitations despite his narcolepsy because it was controlled with medication. AR 141–42, 146–161.

While this Court does not wish to prolong this already drawn-out process for Plaintiff, it cannot credit his testimony as true given the above conflicts and ambiguities. The proper approach is to remand the case. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). In sum, because Plaintiff fails to satisfy the credit-as-true test, the Court remands the case for the ALJ to consider whether there are specific, clear, and convincing reasons for rejecting Plaintiff's symptom testomony.

/ /

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reversal and/or Remand (ECF No. 11) is GRANTED consistent with this Order.

**IT IS FURTHER ORDERED** that on remand, the ALJ carefully consider whether there are specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.

DATED: December 19, 2025

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE